Document Number Case Number
#35   03–C–0473–C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
08/20/2004 12:04:11 PM CDT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

EDWARD G. KRAIMER, Jr.,
GERALD J. MORRELL,
GRAND DADDY'S, LLC,
and KRAIMER PROPERTIES, LLC,

        Plaintiffs,

      v.                        Case No. 03 C 0473 C

CITY OF SCHOFIELD,

        Defendant.

---

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

EDWARD G. KRAIMER, Jr.,
GERALD J. MORRELL,
GRAND DADDY'S LLC, and
KRAIMER PROPERTIES, LLC,
Plaintiffs

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:     (608) 283-6001
Facsimile:  (608) 283-0945
E-mail:      jsolson@scofflaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

  I.   THE ZONING SCHEME THAT REQUIRES A CONDITIONAL USE
PERMIT FOR AN INDOOR THEATER IS UNCONSTITUTIONAL. ........... 1

  A.   The Defendant Has Not Met Its Burden to Justify Its
Restriction on Free Expression. ....................................................... 1

  B.   The Conditional Use Permit Requirement is an
Unconstitutional Prior Restraint on Performing Arts. ...................... 3

      1.   The identification of a land use by reference to an expressive
component of the use, and the requirement that a use so identified
be subjected to a discretionary permitting scheme before it may
lawfully be undertaken requires the permitting scheme to be
analyzed as a prior restraint. .......................................................... 3

      2.   The discretionary permitting scheme for indoor theaters in the
C-1 District lacks Constitutionally required objective decision-
making standards. ....................................................................... 6

      3.   The discretionary permitting scheme for indoor theaters in the
C-1 District lacks Constitutionally required short and guaranteed
decision-making time limits. ......................................................... 8

  II.   THE PLAINTIFFS' CHALLENGE TO THE PUBLIC
ENTERTAINMENT LICENSING ORDINANCE IS NOT MOOT. ............... 9

  III.   THE ADULT ENTERTAINMENT ORDINANCE IS OVERBROAD
BECAUSE IT GOES SUBSTANTIALLY BEYOND PROHIBITING THE
SERVING OF ALCOHOL IN ADULT ENTERTAINMENT
ESTABLISHMENTS. ....................................................................... 15

  IV.   THE NEW ZONING PROVISION IS NOT NARROWLY TAILORED. .
  ......................................................................................... 18

  V.   THE NEW ZONING PROVISION IS OVERBROAD. ..................... 19

CONCLUSION ................................................................... 21

## I. THE ZONING SCHEME THAT REQUIRES A CONDITIONAL USE PERMIT FOR AN INDOOR THEATER IS UNCONSTITUTIONAL.

### A.    The Defendant Has Not Met Its Burden to Justify Its Restriction on Free Expression.

It is uncontested that in the City of Schofield, an indoor theater in the C-1 (commercial district) zoning area may not operate as a permitted use but is listed only as a conditional use. Schofield Zoning Ordinance, § 10.15 (4)(c).  That means that in the C-1 zoning area, no one may offer entertainment of any kind for an audience as a primary use unless and until the city okays such expression by granting a conditional use permit.

In its brief, the defendant has neglected to provide any rationale for this burden upon free expression.  It has failed to provide any factual basis whatsoever to justify the need for <u>any</u> restriction on such expression. In fact, the defendant seems to have completely overlooked the plaintiffs' challenge to the constitutionality of this aspect of its zoning scheme.  And since the burden is on the defendant to justify every aspect of its restriction of free expression, this omission is fatal to the defendant's motion for summary judgment.

1

It is axiomatic that while local governments have broad authority to regulate development by use of zoning legislation, such power must be exercised "within Constitutional limits." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981).  It is equally well established that when a city imposes a restriction upon expression protected by the First Amendment, the burden is upon the city to justify that restriction. *Clark v. Community for Creative Non-Violence.* 468 U.S. 288, 293, n.5 (1984); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000).

If this is true with regard to adult entertainment such as nude dance, which has been ruled to be "expressive conduct within the outer perimeters of the First Amendment, though ...only marginally so" (*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991)(plurality opinion)) then the requirement that the city justify placing a burden upon free expression is even more compelling where the restriction is imposed not only on adult entertainment, but upon a wide variety of serious, artistic expression.[1]

---

[1] It is the city's stated position that, if sufficiently emphasized, public presentation of any of the performing arts, such as singing, dancing, poetry reading, piano playing, etc., results in the presenting establishment being considered either an indoor theater or "similar to" an indoor theater, (and thus treated just the same for zoning purposes). (Deposition of City Attorney Freeburg at 46)

2

**B.    The Conditional Use Permit Requirement is an Unconstitutional Prior Restraint on Performing Arts.**

**1.    The identification of a land use by reference to an expressive component of the use, and the requirement that a use so identified be subjected to a discretionary permitting scheme before it may lawfully be undertaken requires the permitting scheme to be analyzed as a prior restraint.**

The plaintiffs assert that the requirement of obtaining a conditional use permit in advance of presenting entertainment is a prior restraint.  A "prior restraint" is any regulation that gives "public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

Although a  zoning regulation is a time, place and manner regulation, where the regulation requires municipal permission  (i.e., a conditional use permit) before engaging in expression, it is also a prior restraint and thus subject to the strict constitutional tests which the law imposes on prior restraints. *FW/PBS v. City of Dallas*, 493 U.S. 215, 225 (1990); *11126 Baltimore Blvd., Inc. v. Prince George's County, Maryland*, 58 F.3d 988, 995 (4th Cir. 1995), cert. denied, 516 U.S. 1010, overruled in part on other grounds by *City of Littleton v. Z.J. Gifts*, __ U.S. __, 124 S.Ct. 2219 (2004).

See also, *Special Souvenirs, Inc. v. Town of Wayne*, 56 F.Supp. 2d 1062, 1085 (E.D. Wis. 1999)("[L]ocal governments may use zoning ordinances to impose reasonable time, place, and manner restrictions…. If, however, the …zoning scheme effectively requires governmental permission before an adult-oriented business may engage in protected activity, then otherwise valid time place and manner restrictions are analyzed as prior restraints.") The prior restraint analysis has routinely been applied where a city requires conditional use permits prior to the presentation of live entertainment.  *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1268, 1273 (C.D. Cal. 1996); *MGA Susu, Inc. v. County of Benton*, 853 F.Supp. 1147, 1151 (D.Minn. 1994).

In its brief, the defendant frequently asserts that its zoning code is "content neutral" and a "valid time, place and manner regulation."  Even if these assertions were correct, neither would ameliorate the problem of the unconstitutional prior restraint. Where, as here, challenged regulations act as a prior restraint, the city cannot "save" an unconstitutional prior restraint by showing it passes the time, place, and manner tests:

> [T]he Court has made clear that otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to engaging in protected speech must be analyzed as prior restraints and are unconstitutional if they do not limit the discretion of the decision maker and provide for . . .  procedural safeguards.

*Baltimore Blvd., 58 F. 3d* at 995, citing *FW/PBS*, 493 U.S. 215, 227-28 (1990).

4

Many cases implicitly show that even where a law is content neutral, the analysis of whether a law is an appropriate time, place and manner restriction operates independently from the analysis of whether the law is an unconstitutional prior restraint. *See, e.g., FW/PBS*, 493 U.S. at 223. ("Because we conclude that the city's licensing scheme lacks adequate procedural safeguard, we do not reach the issue decided by the Court of Appeals whether the ordinance is properly viewed as a content-neutral time, place and manner restriction...."); *Ward v. Rock Against Racism*, 491 U.S. 781, 793 (1989) (the Court rules out unconstitutional prior restraint before it proceeds to the time, place, and manner analysis), *Graff v. City of Chicago*, 9 F.3d 1309, 1319, 1323, 1335 (7th Cir. 1993)(en banc), cert. denied, 511 U.S. 1085 (1994) (the court suggests that time, place and manner analysis does not matter if the law has been found to be an unconstitutional prior restraint), and *Stokes v. City of Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991) (the same).  Such a division of analyses was explicitly required by the court in *T.J.'s South, Inc. v. Town of Lowell*, 895 F.Supp. 1124, 1134 (N.D. Ind. 1995), where the court explained that once a law is determined to be an unconstitutional prior restraint, "no strong showing under time, place and manner doctrine can change that."

2. **The discretionary permitting scheme for indoor theaters in the C-1 District lacks Constitutionally required objective decision-making standards.**

The city has no defense to the challenge presented by the plaintiffs that the indoor theater conditional use scheme allows unbridled discretion. To the contrary, the city's brief itself demonstrates at least one aspect of the undue flexibility that the guidelines give the decision maker when it asserts: "the specific proposed location for the plaintiffs' adult business is inappropriate given its prime location in the City's highest visibility commercial district." (Defendant's Brief in Support of Its Motion for Summary Judgment, p. 2).  This vague standard (i.e., "inappropriate") complies completely with the standards enunciated in the zoning code (i.e., will not be detrimental to the "public health, safety, morals, comfort or general welfare" § 10.10 (6)) as a basis for consideration of conditional use.  However, it does not comply with the requirement of "narrow, objective, and definite standards," enunciated by the Supreme Court in *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1969).

This type of standard for granting or denying government permission for expressive activity is subjective and generalized enough to mask a motive for denial of the permit based on censorship and to allow such censorship to go undetected (or be unprovable) and remain virtually unreviewable.  This was a central concern of the Supreme Court in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988).  The city

6

may have acted with the noblest of motives or may have denied the plaintiffs a conditional use permit because a desire to censor their intended erotic expression – it is impossible to tell which and impossible to assure that censorious motivations were not the basis for the decision.

The vague and subjective standards of the ordinance do nothing to guarantee that censorship will not be a factor in the decision, and it is the risk that covert censorship may occur that renders the conditional use scheme unconstitutional. "[W]here the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002). And of course, the law does not require courts and plaintiffs to simply take a government agency's word that it is not engaging in content-based censorship; the whole rationale behind the *Shuttleworth* requirement that such decisions be based on pre-existing specific and objective standards (such that it is not possible for reasonable people to differ about their application to a given request for government permission to speak) is to prevent a government decisionmaker from making a decision to censor expression based on its objectionable content and then to lie about his or her motive for the decision, in an effort to gird the decision with the armor of some content neutral, and thus lawful, factor.  See, e.g., *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758 (1988) ("Without these guideposts, post hoc rationalizations by the licensing

7

official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.")

          **3.**     **The discretionary permitting scheme for indoor theaters in the C-1 District lacks Constitutionally required short and guaranteed decision-making time limits.**

There is also no question but that the conditional use permitting scheme fails to include time limits by which an applicant is assured of receiving a determination within a brief period of time.  The defendants assert that as they responded to the plaintiffs' application in a timely manner, timeliness is not at issue.  This misses the point of a facial challenge.

In *FW/PBS, Inc. v. City of Dallas*, the Court reviewed a licensing scheme where applications for adult businesses were required to be investigated by several municipal departments prior to the decision to grant or deny the license.  The ordinance under review ostensibly required a decision on an application to be made within thirty days, but because the ordinance did not <u>ensure </u>that the inspections, which were a prerequisite to the decision, would be completed in less than thirty days, the Court held that <u>the possibility</u> for "indefinite postponement" of the issuance of a license rendered the scheme unconstitutional. 493 U.S.

215, 228 (1990). On a facial challenge, it is the <u>risk of delay</u> that will invalidate an ordinance.

See also, *Lady J. Lingerie v. City of Jacksonville,* 176 F.3d 1358, 1362 (11th Cir. 1999), cert. denied, 529 U.S. 1053 (2000) ("[T]he <u>opportunity</u> for public officials to delay is another form of discretion.") (emphasis added); *Special Souvenirs, Inc. v. Town of Wayne*, 56 F.Supp. 2d 1062, 1088-89 (E.D.Wis 1999)(Where town's zoning ordinance placed no time limits on grant or denial of conditional use permit but stated that "every effort shall be made to approve zoning permit applications within 7 days of application," such did "not constitute a sufficiently firm directive" to town officials and therefore failed to provide adequate constitutional safeguard.)

## II.   THE PLAINTIFFS' CHALLENGE TO THE PUBLIC ENTERTAINMENT LICENSING ORDINANCE IS NOT MOOT.

The defendant asserts that the plaintiffs' challenge to §11.20, the public exhibition licensing ordinance is moot because that ordinance has been repealed, citing *Massachusetts v. Oakes*, 491 U.S. 476 (1989) as support for the proposition that an overbreadth challenge becomes moot

if the challenged law is repealed.[2]  The burden of establishing mootness is on the party asserting it, and "the burden is a heavy one." *Clarkson v. Florence*, 198 F.Supp.2d 997, 1004 (E.D.Wis 2002); *Special Souvenirs, Inc. v. Town of Wayne*, 56 F.Supp.2d 1062, 1079 (E.D.Wis. 1999).

The defendant is incorrect when it characterizes the plaintiffs' challenge to § 11.20 as based on overbreadth alone.  The defendant forgets that the plaintiffs also have asserted that §11.20 was an unconstitutional prior restraint to which plaintiffs were subject. Nevertheless, even defendant's argument that the overbreadth challenge should be found moot is erroneous.

In *Massachusetts v. Oakes*, 491 U.S. 476 (1989) the plurality, consisting of Justice O'Connor (the author of the plurality decision), Chief Justice Rehnquist, Justice White, and Justice Kennedy did opine that an overbreadth challenge is inappropriate where the statute being challenged has been amended or repealed. *Id.* at 582.  However, it is essential to continue reading and take into account the concurrence of Justice Scalia, who provided the critical fifth vote.

Justice Scalia began his opinion: "I do not agree with Justice O'Connor's conclusion that the overbreadth defense is unavailable when the statute alleged to run afoul of that doctrine has been amended to

---

[2] Mootness is the only ground advanced by the defendant relative to the plaintiffs' challenge to §11.20 – there is no argument that §11.20 was not in fact unconstitutional.  By its failure to so argue, the defendant concedes the unconstitutionality of §11.20. *United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994).

eliminate the basis for the overbreadth charge." *Id.* at 586.  Justice

Scalia then detailed his rationale, explaining:

> The overbreadth doctrine serves to protect
> constitutionally legitimate speech not merely *ex
> post*, that is, after the offending statute
> is enacted, but also *ex ante*, that is, when the
> legislature is contemplating what sort of statute
> to enact.  If the promulgation of overbroad laws
> affecting speech was cost free, as Justice
> O'Connor's new doctrine would make it  - that
> is, if no conviction of constitutionally
> proscribable conduct would be lost, so long as
> the offending statute was narrowed before the
> final appeal – then legislatures would have
> significantly reduced incentive to stay within
> constitutional bounds in the first place.

*Id.* at 588.  Justice Scalia characterized Justice O'Connor's conclusion to

the contrary as "bizarre." *Id.*  He undertook the overbreadth analysis,

found the statute not overbroad, and therefore joined the plurality in the

result.  (The four dissenting Justices agreed with Justice Scalia that the

case was not moot but would have found the statute overbroad.)

Subsequent Supreme Court cases have not cited *Oakes* for the

proposition the defendants seek to put forward here.  In *Osborne v. Ohio*,

in a majority opinion (joined by even Justice O'Connor), the Court said:

> [W]e do not believe that *Massachusetts v. Oakes*,
> 491 U.S. 476 (1989) supports [Osborne's] theory
> of this case.  In *Oakes*, the petitioner challenged
> a Massachusetts pornography statute as
> overbroad; since the time of the defendant's
> alleged crime however, the State had
> substantially narrowed the statute. In a separate
> opinion, five Justice agreed that the state
> legislature could not cure the potential
> overbreadth problem through the subsequent

> legislative action; the statute was void as written.

*Osborne v. Ohio*, 495 U.S. 103, 119 (1990).

The rationale touched upon in *Osborne* is set out in some detail in a law review article authored by Richard Fallon. Professor Fallon explains that "everyone has a personal constitutional right not to be subjected to governmental sanctions except pursuant to a constitutionally valid rule of law." Richard H. Fallon, Jr., As Applied and Facial Challenges and Third-Party Standing, 113 *Harv. L. Rev.* 1321, 1331-32 (April, 2000). He (and other scholars, whom he cites) calls this doctrine the "valid rule requirement," a doctrine that he asserts is fundamental to American jurisprudence, as it underlies *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) and is basic to the concept of the rule of law. *Id.* To dismiss a challenge to a law that was unconstitutional, and hence, invalid, when it was enforced and did real damage, simply because the offending law has subsequently been repealed, without allowing the plaintiffs to pursue their claims for damages is antithetical to the valid rule requirement.

The Seventh Circuit Court of Appeals has held: "A question of mootness arises when... a challenged ordinance is repealed during the pendency of litigation and a plaintiff seeks only prospective relief.... We recognize that a defendant's change in conduct cannot render a case moot so long as the plaintiff makes a claim for damages." *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d

924, 929 (7th Cir. 2003).  The Seventh Circuit recently decided *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004), in which a university directive that no students were allowed to communicate with prospective athletes without express authorization and approval was challenged as an unconstitutional prior restraint. The trial court had issued a temporary restraining order. Then the preclearance directive had been retracted, and the offending chancellor had resigned. These circumstances had rendered the TRO moot, but the plaintiffs had received damage awards from the trial court. *Id.* at 677.  Discussing the defendant's claim on appeal that the case should be dismissed as moot, the Court of Appeals held:

> [The retraction and the chancellor's resignation] render the request for injunctive relief moot; however, the requests for declaratory relief and for damages remain.   When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damage award can survive.  *Wolff v. McDonnell*, 418 U.S. 539 (1974)….Accordingly, we will proceed to the merits.

*Crue*, 370 F.3d at 677-78 (some citations omitted).

This holding is congruent with that of the Supreme Court that "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 606-07 (2001). Regardless of the eventual repeal of §11.20, the plaintiffs still have their claim for damages based upon the injuries they

suffered as a result of enforcement of the unconstitutional ordinance before it was repealed. "The repeal did not eradicate the effects that enactment of the ordinance is alleged to have had on plaintiff." *Clarkson*, 198 F.Supp. 2d at 1004.

The defendant also asserts that §11.20 had "no effect" on the plaintiffs' ability to present nude dance entertainment, and therefore, plaintiffs' "as applied" challenge should be disregarded. To the contrary, had the plaintiffs been allowed freedom of expression without the interference of the unconstitutional public entertainment licensing restriction and the indoor theater conditional use scheme, they would have begun offering nude dance in April of 2003. (PPFOF #57, 58)

This is significant because in July, 2003, the city passed the new zoning provision that makes nude dance entertainment unlawful at the plaintiffs' location. Had the plaintiffs been presenting nude dance before the new zoning provision was enacted, they would have been allowed to continue operating at their location as a nonconforming use. *Des Jardin v. Town of Greenfield, et. al.*, 262 Wis. 43, 53 N.W.2d 754 (1952); *Waukesha County v. Seitz*, 140 Wis. 2d 111, 409 N.W.2d 403, 405 (Ct. App. 1987). The aim of judicial relief in a civil rights case is to put the victim as nearly as possible into the position, economic and otherwise, that he or she would have occupied had the unlawful action never occurred. *See, e.g., Hopkins v. Price Waterhouse*, 920 F.2d 967, 976 (D.C. Cir. 1990) aff'd on other grounds, 490 U.S. 228 (1989)(Title VII);

*Brookhart v. Illinois State Bd. Of Educ.,* 697 F.2d 179, 188 (7th Cir. 1983)(Due Process).

The public entertainment licensing law and the indoor theater conditional use, both of which were unconstitutional, operated in tandem. The city's enforcement of both laws had the effect of depriving the plaintiffs of their constitutionally protected rights. That §11.20 was an independent factor is made clear by the fact that, even after the passage of the new zoning provision, the plaintiffs did not begin to offer even bikini dancing until the city agreed not to enforce §11.20 in November, 2003, and subsequently repealed §11.20.


### III.  THE ADULT ENTERTAINMENT ORDINANCE IS OVERBROAD BECAUSE IT GOES SUBSTANTIALLY BEYOND PROHIBITING THE SERVING OF ALCOHOL IN ADULT ENTERTAINMENT ESTABLISHMENTS.


The city seeks to bring its adult entertainment ordinance, §16.03, within the ambit of *Ben's Bar Inc. v. Village of Somerset,* 316 F.3d 702 (7th Cir.,  2003) by arguing that, like the ordinance examined in *Ben's Bar,* its ordinance is simply a complete ban on alcohol at adult entertainment premises. This argument is ineffective for two reasons.

First, *Ben's Bar* does not provide any support for the defendant because, here, the plaintiffs' challenge is based on overbreadth, and there was no overbreadth challenge considered in *Ben's Bar,* as the

Court of Appeals explicitly noted in its opinion. *Id.* at 708, n.11. Secondly, it is erroneous to characterize §16.03 as "a complete ban on alcohol at such adult establishments." *Ben's Bar,* 316 F.3d at 727-28; Defendant's Brief in Support of Its Motion for Summary Judgment, p 29. More accurately, the ordinance bans nudity and certain erotic movements on the premises of every establishment licensed to serve alcohol. §16.03 (6).

This distinction makes a critical difference, because it is this wide scope of the prohibition which renders the ordinance overbroad in every respect discussed in the pertinent caselaw: *Schultz v. City of Cumberland*, 228 F.3d 831, 849-50 (7th Cir. 2000) and *Clarkson v. Town of Florence*, 198 F.Supp.2d 997, 1012-1014 (E.D.Wis. 2002).

The prohibitions are not limited to nude dancing or even to live performances, but also include "graphic representations," specifically including pictures or films which depict any of the prohibited body parts. § 16.03 (6) (f). There is no exemption in the ordinance for serious artistic works that contain nudity. There is no exemption for non-erotic demonstrations that involve partial nudity.

The geographic reach of the ordinance extends beyond bars and taverns to encompass other establishments which hold liquor licenses, such as hotels and restaurants. § 16.03 (5).  Further, the ordinance does not simply ban the expression only in the actual room where liquor is being served; the prohibitions extend to the entire premises.  Therefore,

the ban extends not just to a hotel's bar, but to its lobby, conference centers, and meeting rooms. The ordinance also prohibits infrequent events, and even one-time events, as it makes no exception for performances which occur only occasionally.

And finally, it is a misstatement to say, as the defendant does, that the plaintiffs never intended to provide alcohol at their proposed business. The plaintiffs' reasoning behind the original plan to operate as a non-alcohol serving adult dance establishment was twofold: there was an ordinance , § 16.03, that prohibited adult entertainment at any establishment where alcohol was served, and there were so few places for the under-21-year-old customers (who are denied entrance to places that serve alcohol) to go. (Kraimer Dep at 34-35; Morrell Dep at 21-22).

Although Mr. Kraimer would have preferred to both serve alcohol and present nude dance entertainment, he realized that there was no point in discussing the relative merits of that as an alternative in April 2003, since at that time the adult entertainment ordinance did not allow both nudity and alcohol, and of the two options, nude dance or alcohol, he and Mr. Morrell both agreed that nude dance was the most important to start with. (Declaration of Edward G. Kraimer, Jr. in Support of Plaintiffs' Motion for Summary Judgment, hereinafter "Kraimer Declaration" at ¶7). Kraimer and Morrell thought of the non-alcoholic venue for presenting nude dance as a "starting point." (Kraimer Declaration at ¶7).

In his sworn declaration, Mr. Kramer is quite clear that he and

17

Mr. Morrell would prefer to present nude dance entertainment and to sell alcohol by the drink to the customers at Grand Daddy's. (Kraimer Declaration at ¶¶ 13, 14, 20).  This is sufficient to establish the point for purposes of summary judgment.  *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).  For the city to characterize this as pretext, as it does, is a way of asserting that Mr. Kraimer's evidence on this point is not credible, and the Court may not make credibility determinations at the summary judgment stage.  *Id.* at 770.

The city's position also seems especially ludicrous in light of the fact that the plaintiffs are in fact selling alcohol and presenting entertainment that is as sexually explicit as is lawful, and they have been doing so since the city agreed not to enforce §11.20.  It is absurd, and utterly without support in the record, to suggest that, even now, the plaintiffs' first reaction to a Court ruling freeing them to present nude or semi-nude dancing, with or without alcohol, would be to voluntarily surrender their liquor license.

## IV.  THE NEW ZONING PROVISION IS NOT NARROWLY TAILORED.

The city's adult-oriented establishment zoning provision (hereinafter "new zoning provision") is flawed in more than one respect. Its enactment has reduced the area within the City of Schofield where adult entertainment is allowed. (PPFOF 41).  Zoning Administrator King

testified that the passage of the new zoning provision eliminated "dozens of sites" for adult businesses in the C-2 district where indoor theatres -- the former classification used for adult businesses -- are permitted uses, and dozens more in the C-1 district where indoor theatres are conditional uses.  (King Dep. at 41).  Reducing the area available for sexually explicit speech is an impermissible manner of attempting to reduce secondary effects.  *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 445, 450-51 (2002)(Justice Kennedy, concurring).

Part of the new zoning provision is the definition of an adult cabaret, i.e., a "nightclub... which regularly features...(ii) live performances which are characterized by... specified sexual activities....", §10.15(6)(g)2C.  By inclusion of specified sexual activities, defined in part as  "fondling or erotic touching of human genitals, pubic region, buttocks or female breasts, " the provision intrudes upon a dancer's right to express an erotic message through her dance movements.  *Schultz*, 228 F.3d at 847.  It is therefore not narrowly tailored, as is constitutionally mandated. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 49-50 (1986).

### V.  THE NEW ZONING PROVISION IS OVERBROAD.

Before *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), content-based zoning of expressive uses was believed to be prohibited by

the First Amendment.  That, in fact, was the holding that was reversed in Young.  *See, American Mini Theatres, Inc. v. Gribbs,* 518 F.2d 1014 (6th Cir. 1975).  The only narrow exception to this rule created by *Young* is that, now, content-based zoning is permitted if it is directed at uses that are plausibly believed to cause adverse secondary effects in their communities.  *See, e.g., Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980).  A municipality must have some "evidence" that a particular expressive use is likely to cause secondary effects before it can impose geographical limitations tied to the content of its expressive activity.  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).  The Seventh Circuit has established a very low threshold for the quality and quantity a municipality must have to justify a content-based zoning regulation, *G.M. Enterprises, Inc.,. v. Town Of St. Joseph*, 350 F.3d 631 (7th Cir. 2003), but it is clear that a municipality must be able to bring some evidence to bear that all of the expressive activity encompassed  within the sweep of a content-based zoning restriction can plausibly be believed to cause secondary effects, *R.V.S. v. City Of Rockford,* 361 F.3d 402 (7th Cir. 2004).[3]

The new Adult-Oriented Establishment zoning provision is overbroad in many ways.  These are detailed in the Plaintiffs' Brief in

---

[3] It appears that arguments that an ordinance fails the narrow-tailoring requirement and arguments that it is overbroad are quite similar, and the Plaintiffs do not mean to waive an argument under one heading by including it under the other.  Essentially, the Plaintiffs have chosen to characterize

Support of Plaintiffs' Motion for Summary Judgment at 44-46.  The point to be made here is that the defense offers, in support of its own motion, no evidence that the expressive activity identified by the Plaintiffs as beyond the scope of what could plausibly be believed to cause secondary effects actually does so, and the defense not only has the burden on the Constitutionality of its ordinance generally but it is now asking for summary judgment on this point.   Its motion must be denied, as Schofield's zoning prohibitions are not "applied only to bars and clubs that present nude or semi-nude dancing."  *R.V.S. v. City Of Rockford,* 361 F.3d 402, 412 (7th Cir. 2004).

## CONCLUSION

The public entertainment licensing ordinance and the adult entertainment ordinance are both facially unconstitutional due to overbreadth.  In addition, the zoning code requirement of a conditional use permit for indoor theaters in the commercial district and the public entertainment licensing ordinance are unconstitutional prior restraints.

The plaintiffs have incurred injuries as a result of each of these regulations. The plaintiffs' challenge to the repealed public entertainment licensing ordinance is not moot because the plaintiffs' claim for damages

---

arguments aimed at language that seems to have been drafted out of fear that someone might find a loophole as overbreadth arguments.

continues to give the plaintiffs a live controversy and a stake in the outcome.  If the Court holds that the plaintiffs are entitled to be treated as a nonconforming use at their present location, it need not address the plaintiffs' challenge to the new zoning provision. That regulation also suffers from constitutional defects and should not in any event be enforced against the plaintiffs.

The defendant's motion for summary judgment should be denied in its entirety.

Dated this 20th day of August, 2004

Respectfully submitted,

EDWARD G. KRAIMER, Jr.,
GERALD J. MORRELL,
GRAND DADDY'S LLC, and
KRAIMER PROPERTIES, LLC,
Plaintiffs

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:        (608) 283-6001
Facsimile:    (608) 283-0945
E-mail:       jsolson@scofflaw.com

Jeff Scott Olson
ATTORNEYS FOR PLAINTIFF

22