Document Number Case Number
031          03-C-0473-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
08/20/2004 05:13:25 PM CDT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

EDWARD G. KRAIMER, JR.
GERALD J. MORRELL,
GRAND DADDY'S, LLC, and
KRAIMER PROPERTIES, LLC,

                    Plaintiffs,

v.                                    Case No.: 03 C 0473 C

CITY OF SCHOFIELD,

                    Defendant.

## DEFENDANTS=BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION.

The plaintiffs, Edward G. Kraimer, Jr., Gerald J. Morrell, Grand Daddy's, LLC, and Kraimer Properties, LLC, and the defendant, City of Schofield, have filed cross-motions for summary judgment in the plaintiffs' lawsuit challenging the constitutionality of several of the City's zoning and licensing regulations. The City presents this brief in opposition to the plaintiff' motion and requests that the court reject the legal arguments set forth in the plaintiffs' brief and issue an order denying their motion for summary judgment.

1

To the extent necessary to respond to the specific arguments presented in the plaintiffs' proposed statement of facts and legal arguments in support of their motion, the City incorporates, herein, all of the proposed undisputed facts, and legal arguments previously filed in support of the City's cross-motion for summary judgment.

## ARGUMENTS IN OPPOSITION.

Although many of the legal issues presented in the opposing cross-motions are similar in this case, the manner in which those issues are presented to the court in each motion are slightly different.  Essentially, the plaintiffs jointly contend that they are entitled to summary judgment because: (1) the City's repealed Public Entertainment License was overbroad; (2) the City's alcohol license prohibition for adult businesses is overbroad (or was overruled when the City zoning code was amended); and (3) the City's zoning code requiring a conditional use permit for their business in the City's C-1 zoning district is overbroad and vests unbridled decision-making on the City.  (Plaintiffs' Summary Judgment Brief 5-6).  In addition, they argue that had the City not enforced its various ordinances when they attempted to open their business, the business would have been "grandfathered in" and not subject to the City's new adult-establishment zoning provision.  Nonetheless they make a facial challenge to the new adult-establishment zoning code as well.  Finally, they argue that the current requirement that they obtain a conditional use permit before they operate their business in the C-1 zone is an

unconstitutional prior restraint.  The plaintiffs' argument should be rejected for the reasons set forth below.

## I.     SUMMARY JUDGMENT STANDARD.

Summary judgment is only appropriate if there are no genuine issues of material fact presented on the motion and the moving party is entitled to summary judgment as a matter of law. *Technology Mktg. Corp. v. Hamlin, Inc.,* 974 F. Supp. 1224, 1226-27 (W.D. Wis. 1997) (citations omitted).   The court analyzes all undisputed facts, the non-moving party's version of all disputed facts, and all reasonable inferences that can be drawn in favor of the non-moving party.  *See Estate of Saldana v. Weitzel*, 912 F. Supp. 413 (E.D. Wis. 1996).

## II.    ISSUES OF STANDING RELATED TO THE CORPORATE PLAINTIFFS.

The plaintiffs' brief lumps many of their arguments and constitutional challenges to the City's various zoning, licensing, and alcohol provisions together, improperly blurring each of the plaintiffs' potential claims and the distinction between facial challenges to the ordinances and the application of each particular ordinance to each plaintiff in this case. There are four distinct plaintiffs in this case, two individuals, Edward G. Kraimer, Jr. and Gerald J. Morrell, and two corporate entities, Grand Daddy's, LLC, and Kraimer Properties, LLC.   (Amended Complaint).   The plaintiffs seem to allege that all of the plaintiffs collectively have the right to make all of the claims they are pursuing in this lawsuit, irrespective of their actual involvement in the case.

3

First, as noted above, the plaintiffs are making both "facial" and "as applied" challenges to the various ordinances:

> A constitutional challenge to a law can take one of two forms, "facial" or "as applied." Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement,* 48 Am. U. L. Rev. 359, 360 (1998). A facial challenge alleges that the law cannot constitutionally be applied to anyone, no matter what the facts of the particular case may be. *Id.; see also Forsyth County v. Nationalist Movement,* 505 U.S. 123, 133 n. 10, 112 S. Ct. 2395, 120 L.Ed.2d 101 (1992) (noting that facts concerning how law was applied to plaintiff were irrelevant to facial challenge). An "as applied" challenge, on the other hand, alleges that the law is unconstitutional only insofar as it is applied to the specific facts of the case under review. Isserles, *supra,* at 360.
>
> A successful facial challenge results in the complete invalidation of the law in question. Further, such challenges typically rest upon a finding that the rights of others not before the court are implicated by the law. *See, e.g., Broadrick v. Okla.,* 413 U.S. 601, 612, 93 S. Ct. 2908, 37 L.Ed.2d 830 (1973).

*M.D.K., Inc. v. Village of Grafton*, 277 F. Supp.2d 943, 947 (E.D. Wis. 2003). Thus, while standing to pursue a facial challenge to an ordinance does not depend necessarily on a specific injury to the actual plaintiffs, *see FW/PBS v. City of Dallas*, 493 U.S. 215, 222 (1990), an "as applied" challenge requires that the plaintiffs establish the following:

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' ". Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result

> [of] the independent action of some third party not before the
> court."   Third, it must be "likely," as opposed to merely
> "speculative," that the injury will be "redressed by a favorable
> decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(citations omitted).  Not all of

the plaintiffs can establish standing to pursue the "as applied" challenges in this case.

### A.   *Kraimer Properties, LLC.*

The plaintiff, Kraimer Properties, LLC, owns the real property and building located

at 861 Grand Avenue and purchased it in late 2002 or early 2003. (DPF 1, 3).[1]  Kraimer

Properties purchased the property in late 2002 or early 2003.   (DPF 5).   Kraimer

Properties has no ownership interest in Grand Daddy's, LLC , and its only involvement in

the property is as landlord.  (DSPF 111).  The only income Kraimer Properties receives

from its ownership of the property is rental income from its lease with Grand Daddy's

LLC, and while Grand Daddy's has occasionally fallen behind on rent, it has always

received its rent.  (DSPF 112, 113).  Finally, Kramer Properties did not apply for either a

public entertainment license or conditional use permit with the City. (PPF 20; DRPPF 29).

Based on these undisputed facts, Kraimer Properties lacks standing to challenge the

application of the City's ordinances to it in this case.  Kraimer Properties cannot show that

it suffered an injury in fact in this case from the manner in which the ordinances were

---

[1] The following abbreviations are used throughout this brief: DPF (Defendant's Proposed
Findings of Fact); PPF (Plaintiffs' Proposed Findings of Fact); DSPF (Defendant's
Supplemental Proposed Findings of Fact); and DRPPF (Defendant's Response to Plaintiffs'

applied to it during the application process in April and May 2003. *See Lujan,* 504 U.S. at 560-61. That is because it did not apply for the license or conditional use permit. Kramer Properties is the mere landlord for the applicants and it has received everything it was supposed to under the lease from its tenant, regardless of whether Edward Kraimer and Gerald Morrell were able to open the non-alcohol adult business with nude dancing at the location on Grand Avenue. In short, the plaintiff, Kramer Properties, has not suffered either an "actual or imminent" "invasion of a legally protected interest" by the operation of the challenged ordinances, and, therefore, cannot pursue an "as applied" challenge to those ordinances. See *Id*. (citations omitted).

### B.  *Grand Daddy's, LLC.*

After Gerald Morrell and his wife met with Edward Kraimer to discuss their proposed business, Gerald Morrell and Edward Kraimer filed the application for the Public Entertainment License with the City on April 28, 2003. (DPF 8, 41). Later Edward Kraimer filed an application for the conditional use permit. (DRPPF 29). The license and permit were denied on June 10, 2003, by the City Council. (DPF 57, 58). After the denial, Morrell and Kraimer later formed Grand Daddy's, LLC, to operate a sports bar business at the Grand Avenue location. (PPF 16, 37; DPF 11).

 Grand Daddy's, LLC, lacks standing to make an "as applied" challenge to the operation and application of the conditional use permit zoning code, alcohol licensing

Proposed Facts).

provision, and public entertainment license during the April-June 10, 2003 period, because it did not exist at the time.   Only Gerald Morrell and Edward Kraimer filed the applications with the City and they are legally distinct from a corporate entity they later formed.  *See Olen v. Phelps*, 200 Wis. 2d 155, 162, 546 N.W.2d 176 (Ct. App. 1996) (under Wisconsin law a corporation is treated as a legal entity distinct from its members)(citation omitted).  Moreover, in Wisconsin a corporation has no legal existence or being, until it is legally organized.  *See e.g.,* Hinkley v. Sagemiller, 191 Wis. 512, 517, 210 N.W. 839 (1926).  Accordingly, Grand Daddy's LLC, has no standing to challenge the application of the City's ordinances prior to the company's formation, because it cannot establish it suffered any injury for those actions.  *See Lujan,* 504 U.S. at 560-61.

### III.   THE PLAINTIFFS' FACIAL CHALLENGE TO SCHOFIELD ORDINANCE SEC. 11.20 IS MOOT BECAUSE THE ORDINANCE HAS BEEN REPEALED.

The plaintiffs continue to allege and argue that Schofield Ordinance Sec. 11.20 was facially unconstitutional for various reasons.  (First Amended and Supplemented Complaint at ¶ 501-06; Plaintiffs' Summary Judgment Brief at p. 11-19).   In December 2003, however, the City Council repealed the ordinance.  (DPF 102, PPF 44).  The plaintiffs acknowledge the ordinance has been repealed, but still ask the court to find the statute was facially overbroad and vested the City with unbridled discretion.  The City requests that the court reject this facial challenge to the constitutionality of the ordinance because the ordinance no longer exists and, therefore, the remedy available in a facial challenge —

complete invalidation of the ordinance — no longer is necessary or appropriate. Consequently, any facial challenge to the repealed ordinance is moot.

As noted above, "[a] facial challenge alleges that the law cannot constitutionally be applied to anyone, no matter what the facts of the particular case may be." *MDK, Inc.*, 277 F. Supp.2d at 947. Once a repeal of the challenged ordinance has occurred, the constitutional issue presented in a facial challenge is moot, because the ordinance cannot "chill protected expression in the future." *Massachusetts v. Oates*, 491 U.S. 476, 583-84 (1989) (also noting "the special concern that animates the overbreadth doctrine is no longer present after the amendment or repeal of the challenged statute" *Id*. at 584).

The City of Schofield has repealed the Sec. 11.20, thereby, automatically precluding its future enforcement against other parties not before the court.   "A successful facial challenge results in the complete invalidation of the law in question." *MDK, Inc.*, 277 F. Supp.2d at 947.

> [A] plaintiff alleging only overbreadth challenges to a law probably cannot prevent mootness by alleging any kind of damages because § 1983 may not provide for damages when the plaintiff prevails on an overbreadth theory. *Mentzel v. Gilmore*, 54 F. Supp. 2d 896, 899-900 (E.D. Wis. 1999); *DiGiambattista v. Doherty*, 897 F. Supp. 649, 656 (D. Mass. 1995); *Noelker v. City of Kansas City*, 802 F. Supp. 268, 269-70 (W.D. Mo. 1992); *Hearn v. Hudson*, 549 F. Supp. 949, 954 (W.D. Va. 1982)....An overbreadth plaintiff does not allege a violation of his or her own constitutional rights but rather has standing to challenge the law on behalf of others whose speech the ordinance might chill. *See Massachusetts v. Oaks*, 491 U.S. 576, 581 (1989).   Section 1983 allows

> plaintiffs to recover damages only when the plaintiff's own
> rights were violated, which by definition has not occurred in
> an action alleging only overbreadth challenges.  See 42 U.S.C.
> § 1983 (1994); *Hearn*, 549 F. Supp. at 955-56.

Michael Ashton, Note,  *Recovering Attorneys' Fees with the Voluntary Cessation Exception to Mootness Doctrine after Buckhannon Board and Care Home, Inc*. *v. West Virginia Department of Health and Human Resources*, 2002 Wis. L. Rev. 965, 980 n.109.

The plaintiffs argue that a decision from the Eastern District of Wisconsin allows them to pursue the facial challenge despite the repeal of the challenged ordinance.  *See Clarkson v. Town of Florence*, 198 F. Supp. 2d 997, 1014 (E.D. Wis. 2002).  However, close review of the decision shows that the court in *Clarkson* was actually conducting an analysis of how the challenged ordinance in that case was applied to the specific plaintiff, and was not actually a true "facial" challenge.  *See Clarkson*, 198 F. Supp.2d at 1002-1005 (determining standing and mootness based on actual injury to plaintiff).  Further, the district court's analysis in *Clarkson* has never been applied to a "facial" challenge in the Western District of Wisconsin, nor has it ever been adopted as a proper methodology by the Seventh Circuit.  Consequently, the City asks that the court in this case reject *Clarkson* and instead apply the majority analysis of the courts discussed in the above law review article.

Nonetheless, to the extent Gerald Morrell and Edward Kraimer may argue that the specific operation of the Section 11.20 was unconstitutional "as applied" to them in the

present case, this argument should be rejected by the court because the undisputed facts show that the infirmities that they allege in the ordinance never applied to them.

Specifically, the evidence presented on the cross-motions show that: (1) Morrell and Kraimer applied for their Public Entertainment License on April 28, 2003 (DPF 41); (2) shortly thereafter the city attorney was contact by the plaintiffs' counsel who had expressed his concerns about the City's entertainment license procedure (DPF 45); (3) the city attorney conveyed to the plaintiffs' counsel that the entertainment was really not at issue, but that the zoning issue related to the conditional use permit needed to be complied with to obtain a license (DPF 46); (4) Edward Kraimer then applied for a conditional use permit on May 16, 2003 (PPF 29; DRPPF 29); (5) the City held the required public hearings regarding the conditional use permit application as well as the required City Plan Commission meeting on June 4, 2003 and City Council meeting on June 10, 2003  (PPF 30, 34, 35); (7) the conditional use permit was denied on June 10, 2003 (PPF 35); (8) the Public Entertainment License was denied on the same day solely because the plaintiffs had failed to obtain the necessary conditional use permit (PPF 36; DRPPF 36). Moreover, the plaintiffs in the fall of 2003, applied for and obtained a Public Entertainment License from the City without any difficulty for the presentation of karaoke entertainment in their tavern. (PPF 42).

Accordingly, in this case, while the plaintiffs challenge some of the provisions of the repealed ordinance Section 11.20 because of alleged: inappropriate standards in the

10

ordinance; "unbridled discretion" on the part of the City in whether to grant the license; lack of procedural safeguards and time limits for granting or denying the license — the facts show that in the manner in which the ordinance was actually *applied* to Morrell and Kraimer in this case, none of these alleged constitutional infirmities ever applied to the application, consideration, and denial of their conditional use permit.

When they applied for Public Entertainment License to operate their business, it is undisputed that under the separate zoning code requirements, the plaintiffs needed a conditional use permit to operate their proposed business in the C-1 District.  Without the conditional use permit for the location, the plaintiffs could not operate their proposed business at 861 Grand Avenue.  Thus, under the facts in this case, the application and denial of the Public Entertainment License did not prevent the plaintiffs from operating their proposed "nonalcoholic adult entertainment facility."

The *only* basis for the City's denial of Morrell and Kraimer's Public Entertainment license was that the proposed business activity did not have the necessary conditional use permit to operate in the C-1 District.  (PPF 36; DRPPF 36).  That decision was based on Sec. 11.20(c)(2)(dd)(3) of the Schofield Ordinances which had as a requirement before a Public Entertainment License could be issued:

> (3)  The premises for which a license is sought will comply with the provisions of this section and all other applicable rules, regulations, ordinances and state laws, specifically including, but limited to, zoning regulations, building code requirements and fire prevention code;

11

(DPF 105).  Based on the text of the ordinance, Sec. 11.20(c)(2)(dd)(3), is a content-neutral requirement that makes no mention of the type or content of entertainment to be offered by the proposed applicant, it simply and unambiguously provides that before a license can be issued, the premises must comply with "all other applicable... zoning regulations." (DPF 105).  Accordingly, based on the Minutes of the June 10, 2003 City Council Meeting, the sole reason for denying Morrell and Kraimer's entertainment license was a content-neutral zoning ordinance related to the need for a conditional use permit at the location of the proposed business in a C-1 District.  (PPF 36; DRPPF 36).  Therefore, the actual basis for the denial of the Public Entertainment License was not the standards the plaintiffs' complain of in their brief, that is, the City did not base it decision on the applicants' "good moral character and reputation."  (Plaintiff's brief at 17).  To the contrary, as applied to this case, the only factor involved in the City's decision was just the type of "narrow, objective, and definite" standard the Supreme Court has declared as necessary.  *See FW/PBS v. City of Dallas*, 493 U.S. 215, 225 (1990).  Section 11.20(c)(2)(dd)(3),  left no room for discretion on the part of the City Council.  If the premises did not comply with "all other applicable... zoning regulations," (DPF 105), the license application had to be denied.  (DPF 105).  *See City of Littleton v. Z.J. Gifts, LLC*, ___ U. S. ___ , 124 S. Ct. 2219, 2225-26 (2004) (noting that objective and nondiscretionary standards for granting or denial of license  can defeat a constitutional challenge to a license scheme).

12

In addition, Morrell and Kraimer received the decision on their license application in less than 45 days after they applied for the permit. Although they contend the repealed ordinance "had the potential to mire the application in a delay of indefinite duration," here there is no evidence of any undue or unreasonable delays on the part of the City in considering the application, investigating the application, reviewing the application, and denying the application. *See id*., ___ U.S. ___, 124 S. Ct. at 2224-2225 (discussing how undue delays in licensing determination can render such a regulation unconstitutional).

Thus, although the plaintiffs allege the repealed ordinance had unconstitutional problems on its face, the undisputed facts show that none of those alleged problems came into play as far as Morrell and Kraimer's application for the license. Consequently, "as applied" to the plaintiffs under the specific facts in this case, the ordinance was completely constitutional. The license application was reviewed expeditiously by the City, and denied based solely on the non-discretionary factor of the premises not complying with the requirements of the City's zoning code.

## IV.   THE GENERAL ZONING CODE AND CONDITIONAL USE PROCEDURE IS NOT FACIALLY UNCONSITUTIONAL.

In their Amended Complaint, the plaintiffs' for the first time challenged the City of Schofield's general zoning code scheme, and the manner in which the code requires certain uses to obtain a "conditional use permit" in order to operate within a given zoning district within the City of Schofield. The plaintiffs attempt to argue that this general zoning code

provision, adopted and controlled by standards set by the Wisconsin legislature pursuant to Wisconsin Statute Section 62.23(7)(a), is a "prior restraint" targeting protected expressive activities.  It is undisputed, however, that the general zoning code did not prohibit the plaintiffs from opening their business in the City of Schofield and that the plaintiffs would have been free to operate their proposed non-alcohol adult business providing nude or semi-nude dancing in the C-2, I-1, or I-2 districts without a conditional use permit in April 2003.  Accordingly, the court should reject this argument because the City's general zoning code, and its conditional use permit procedure are nothing more than constitutional "locational" zoning regulations that do not target or limit expressive conduct, but merely proscribe where in the city all types of land "uses" of a property can be conducted.  In short, the zoning code provisions are not "prior restraints" on protected activities, but are nothing more than neutral "time and place" regulations.

The plaintiffs improperly characterize the City's general zoning code and its requirement of a conditional use permit in the C-1 District for "indoor theaters" or "other uses similar to or customarily incident to" indoor theaters, as  "unlawful prior restraint." In making this argument, the plaintiffs' rely on case law from other circuits, without addressing the Seventh Circuit's decision in *Blue Canary v. City of Milwaukee*, 270 F.3d 1156 (7th Cir. 2001), which specifically allowed a municipality to apply a general zoning code land use scheme to prohibit the operation of a "burlesque theater" in proximity to a residential area, without being analyzed under the constitutional dictates controlling "prior

14

restraints."  In doing so, the Seventh Circuit specifically rejected the theater's owner's argument that allowing a zoning administrator to determine whether an "unlisted use is 'similar' to a listed one injects an impermissible degree of discretion into the administration of the zoning law."  *Blue Canary*, 270 F.3d at 1158.  The same analysis should apply in the present case.  The City of Schofield's zoning code and requirement for a conditional use permit in a C-1 zone for an "indoor theater" or "other uses similar to or customarily incident to" indoor theaters, is not a prior restraint either on its face or in the manner it was applied in this case.

In *Blue Canary* the plaintiff had purchased a tavern in Milwaukee that provided polka music entertainment for its customers.  The plaintiff applied for a "cabaret license" with the city with notifying the city that it would be providing "exotic dancing."  After the City refused to renew the plaintiff's tavern license:

> [T]he plaintiff applied for a license to use the premises for a burlesque theater that would provide the same entertainment … (and characterized by the plaintiff itself as "burlesque dancing which features dancers who are nude or semi-nude") but without sale of alcoholic beverages. The City denied the application on the basis of the provision of its zoning ordinance governing proposed land uses that are not listed in the ordinance. Such a use must conform to the rules applicable to a "similar" use that is listed.  Milwaukee Code of Ordinances § 295-27.  Burlesque theaters are not a listed use, but are similar, the City's zoning commissioner determined, to "adult motion picture theater[s]," which are a listed use--and a use that is banned in the part of Milwaukee in which the plaintiff's premises are located because it abuts a residential area.  Milwaukee  Code  of  Ordinances  §§  295-14-9,

15

295-322-10e.  So the application was denied, precipitating this suit, which claims that the denial violated the plaintiff's right of free speech.  The district court dismissed, precipitating this appeal.

*Blue Canary*, 270 F.3d at 1157.

In rejecting an argument very similar to that presented by the plaintiffs in the present case, the Seventh Circuit concluded:

> The City has not prohibited the plaintiff from operating a burlesque theater, with or without nudity.  It has merely prohibited the operation of such a theater in proximity to a residential neighborhood.  Milwaukee is a large city and the plaintiff does not deny that there are abundant convenient locations in which the operation of such a theater would not violate the City's zoning law.  In these circumstances, as we said in our previous opinion, "the impairment of First Amendment values is slight to the point of being risible, since the expressive activity involved in the kind of striptease entertainment provided in a bar has at best a modest social value and is anyway not suppressed but merely shoved off to another part of town, where it remains easily accessible to anyone who wants to patronize that kind of establishment." 251 F.3d at 1124.  True, a theater is not a bar; we remarked that "liquor and sex are an explosive combination, so strip joints that sell liquor are particularly unwelcome in respectable neighborhoods," *id.*, and this concern is inapplicable to the proposed operation of the plaintiff's premises as a theater.  But the impairment of free speech is still minimal and is outweighed by the legitimate social interest in segregating sex-oriented businesses from residential land uses.  As we noted in our previous opinion, "countless cases allow municipalities to zone strip joints, adult book stores, and like erotic sites out of residential and the classier commercial areas of the city or town." *Id.* To the cases cited there we now add *David Vincent, Inc. v. Broward County,* 200 F.3d 1325, 1333-37 (11th Cir.2000);  *D.H.L. Associates, Inc. v. O'Gorman,*

16

199 F.3d 50, 59- 60 (1st Cir.1999);  *Buzzetti v. City of New York,* 140 F.3d 134, 140-41 (2d Cir.1998);  *Z.J. Gifts D-2, L.L.C. v. City of Aurora,* 136 F.3d 683 (10th Cir.1998), and *Alexander v. City of Minneapolis,* 928 F.2d 278, 282-84 (8th Cir.1991).

> **The plaintiff argues that allowing the zoning commissioner to determine whether an unlisted use is "similar" to a listed one injects an impermissible degree of discretion into the administration of the zoning law. And it is true that the case law expresses concern about arming public officials with discretion to deny expressive activities, lest that discretion be used to suppress unpopular speech.**  E.g., *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S. Ct. 2138, 100 L.Ed.2d 771 (1988);  *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S. Ct. 2559, 69 L.Ed.2d 298 (1981);  *MacDonald v. City of Chicago,* 243 F.3d 1021, 1026 (7th Cir.2001);  *Steele v. City of Bemidji,* 257 F.3d 902, 907 (8th Cir.2001).  But some degree of discretion is an unavoidable feature of law enforcement.  *Ward v. Rock Against Racism,* 491 U.S. 781, 794, 109 S. Ct. 2746, 105 L.Ed.2d 661 (1989).  **Legislatures are not omniscient and cannot be expected to enumerate every possible land use that might present a zoning issue.  The use of a term such as "similar" to stop up potential loopholes is not forbidden by the First Amendment**, cf. *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1348-49 (11th Cir.1994) ( "equivalent"), at least where no feasible alternative is suggested.  And there is no reasonable doubt that a burlesque theater that exhibits nude dancing is similar to an adult movie theater.  Both are theaters, both present erotic entertainment, and if anything a live sex show is more erotic than a celluloid one.

*Id*. at 1157-58 (Emphasis added).

Similar to the zoning ordinance at issue in *Blue Canary*, the general zoning code provisions challenged by the plaintiffs in this case, are general land use provisions that

have nothing to do with the content of any expressive activity but are merely targeted to fulfill the requirements under Wisconsin statutes for zoning codes. Here the Schofield Ordinance does nothing more than what is required by Wisconsin Section 62.23(7)(b), which provides:

> For any and all of said purposes the council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; *and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings and for the use of land throughout each district, but the regulations in one district may differ from those in other districts.* The council may with the consent of the owners establish special districts, to be called planned development districts, with regulations in each, which in addition to those provided in par. (c), will over a period of time tend to promote the maximum benefit from coordinated area site planning, diversified location of structures and mixed compatible uses. Such regulations shall provide for a safe and efficient system for pedestrian and vehicular traffic, attractive recreation and landscaped open spaces, economic design and location of public and private utilities and community facilities and insure adequate standards of construction and planning. Such regulations may also provide for the development of the land in such districts with one or more principal structures and related accessory uses, and in such districts the regulations need not be uniform.

Wisconsin Statute Section 62.23(7)(b). (Emphasis added). Further, the Wisconsin Statutes requires that zoning ordinances in the state must be designed to accomplish the following purposes:

18

> to lessen congestion in the streets;  to secure safety from fire, panic and other dangers;  to promote health and the general welfare;  to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems;  to encourage the protection of groundwater resources;  to prevent the overcrowding of land;  to avoid undue concentration of population;  to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements;  and to preserve burial sites, as defined in s. 157.70(1)(b). Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city.

Wisconsin Statute Section 62.23(7)(c).  As such, the standards that the plaintiffs attack in the Schofield code regarding conditional use permits, are those that the Wisconsin Legislature has specifically required municipalities to take into consideration under their zoning codes.

Under Wisconsin law "[I]the most general sense, the purpose of all zoning is to control land use and development in order to promote public health, safety, welfare, morals, and aesthetics." *Ziervogel v. Washington County Bd. Of Adjustment*, 2004 WI 23, ¶ 22, 269 Wis. 2d 549, 676 N.W.2d  401 (citation omitted).  Moreover, "[w]ithin these general purposes, use zoning regulates fundamentally how property may be used, in order to promote uniformity of use within neighborhoods and regions." *Id*.  Further, under Wisconsin law a "conditional use" is one that in not inherently incompatible with a particular are, but which might create problems if permitted to locate in the area as a

19

matter of right.  *See generally Primeco Personal Communications v. City of Mequon*, 242 F. Supp. 2d 567 (E.D. Wis. 2003).

In this case, the Schofield Code has divided the city into various zoning districts to ensure a uniform neighbor hood within the City.  Consistent with Wisconsin Statute § 62.23(7)(b), this zoning code divides the City into various zoning districts: R-1 (single family residential); R-2 (two-family residential); R-3 (general residential); C-1 (first commercial); C-2 (second commercial); I-1 (limited industrial); and I-2 (general industrial).  (DPF 89).  Under the zoning code, each of these districts has specified permitted uses, as well as, conditional uses for each district.  (DPF 90).  The zoning code is also devised so that the various district classifications are "nested" within each other — from most restricted uses to least restricted uses, with the most restricted being R-1, and the least restrictive being I-2.  (DPF 91).  Because of the "nested" organization of zoning districts, a use that is either permitted or conditional in a more restrictive district, is automatically a permitted use in both the next least-restricted classification and all of the other increasing less-restricted classifications under the zoning scheme. (DPF 92).  Thus as relevant to the plaintiffs' argument, a permitted or conditional use in C-1 is automatically a permitted use in: C-2, I-1, and I-2.

As the court in *Blue Canary* noted  "Legislatures are not omniscient and cannot be expected to enumerate every possible land use that might present a zoning issue.  The use of a term such as "similar" to stop up potential loopholes is not forbidden by the First

Amendment." *Id.* at 1157-58.  Thus, in this case the City concluded that "other uses similar to or customarily incident to" the other itemized conditional uses in the C-1 District could also qualify as a "conditional use" in the C-1 District.

When Kraimer applied for a conditional use permit for the proposed business, the City determined that it did not specifically meet any of the definitions of permitted uses in the C-1 District, but by giving the code a liberal reading, the proposed business could be viewed as similar to an "indoor theater" one of the designated conditional uses in the code.

Thus, on May 6, 2004, City Attorney Freeburg sent the mayor an opinion letter discussing the plaintiffs' application and, among other things, his opinion that under the City's zoning code, the plaintiffs' proposed non-alcoholic adult business, with a self-professed principal use of featuring nude or semi-nude dancing entertainment, would require a conditional use permit to operate in the C-1 District.  (DRPPF 40).

Freeburg concluded in his May 6 letter the following:

> I do have some observations that are implicated by the zoning code.  Under zoning regulations, if a particular use is not specifically permitted, it is to be understood to be prohibited.  Reviewing the list of permitted uses in a C-1 commercial district, the public exhibition or public entertainment is not a permitted use.  Those C-1 premises where public exhibition and entertainment has been as an ancillary or incidental use of a tavern, which is a permitted use.
>
> There is no specific conditional use which addresses an establishment primarily dedicated to public exhibition or entertainment.  However, a "indoor theater" is a conditional use in a commercial district.  A conditional use, as you know,

21

is one that is not permitted as a right, but under the proper circumstances and with the imposition of the appropriate conditions, may be granted as a conditional use in that particular zoning district. The common dictionary definition of a theater is a building for dramatic performances or a building or area for showing motion pictures. This does not strictly apply to the proposed activity of this public entertainment/exhibition license. However, section 16.15(4)(c) indicates a conditional use permit can be issued for "other uses similar to or customarily incident to any of the above uses." Therefore if this activity is going to be conducted, it would be necessary for the owner of the property to first obtain a conditional use permit.

> ....

> In summary, based on the information available to date, it appears that an exhibition/entertainment license cannot issue pursuant to this application because at present the applicant cannot comply with section 2(dd)(3) regarding compliance with other applicable rules, regulations, ordinances and state laws. It appears that unless the applicants surrender the alcohol licenses for the premises and obtain a conditional use permit for the proposed use, the public entertainment/exhibition license cannot issue.

(DRPPF 40). However, a business with a subordinate or incidental use of public entertainment and exhibition could have been either a permitted or conditional use under the zoning code depending on the zoning district classification. (DRPPF 40). In essence, the City concluded that same thing that the City of Milwaukee did in *Blue Canary*, it applied its zoning code in the most liberal manner possible by concluding that the plaintiffs' proposed business was a use similar to an "indoor theater" and, therefore, would be allowed to seek a conditional use permit for the C-1 District.

22

Prior to the hearing held on June 4, 2003 and the City Council meeting on June 10, 2003, Freeburg had forwarded to the Commission and Council Member a memo explaining the issue to be decided regarding the conditional use permit application.  (DPF 51). Freeburg's memo set forth the specific standards of review provided in the zoning code for conditional use applications, and also informed the members that they could not consider "whether [they] approve of nude dancing in determining this conditional use permit. [They could] consider the standards under the ordinance, or any information before it relating to the effects of such a business in relation to those standards." (DPF 52). Freeburg also informed the Council and Commission members "you can address the effects of the use itself, not the content of the performance the use proposes."  (DPF 53).

After a public hearing on the issue in which the plaintiffs were allowed to present their reasons for the proposed business and their arguments in favor of the business, the City Plan Commission voted on the proposed conditional use permit.  (DPF 54). The Official Minutes of the June 4, 2003 Plan Commission Meeting, provide in relevant part:

> Conditional Use Request by Edward Kraimer: Discussion of the various ordinances and possible applicability to the conditional use request.  Police Chief Dan Vergin stated that the possibility of increased police presence in Schofield.  Their major concern is about the undesirable activity that this type of establishment will attract not only within the confines of the building but also around the surrounding area.  Mayor Krause discussed how the City's portion of the Everest Metro Police Department is partly calculated on police activity in the City. Discussion about the fact the alcohol license would have to be surrendered before a conditional use request will be granted. Motion by Alderman Al Bremer to recommend to the City Council denial the conditional use request based on the following reason, seconded by Sarah Kamke.  Carried by unanimous roll call vote.
> Reasons:

23

> • Not consistent with other permitted conditional uses in a C-1 Zoning District.
> • Will diminish surrounding property value.
> • Stop further development and improvement of surrounding properties
> • Potential businesses will be reluctant to relocate into the area
> • Safety concerns due to the potential increase in crime.

(DPF 55)

Thereafter, on June 10, 2003, the City Council held its monthly meeting and considered the plaintiffs' conditional use permit application and the public entertainment license application.   (DPF 56). The Official Minutes of the June 10, 2003 City Council Meeting, provide in relevant part:

> #3  Conditional Use Request by Ed Kraimer: Motion by Bremer, seconded by Szekeress to deny the conditional use request per recommendation by Planning Commission based on the following reasons. Carried by unanimous roll call vote:
> • Not consistent with other permitted conditional uses in a C-1 Zoning District.
> • Will diminish surrounding property value.
> • Stop further development and improvement of surrounding properties
> • Potential businesses will be reluctant to relocate into the area
> • Safety concerns due to the potential increase in crime.

(DPF 57).

These are all factors that the City was required to consider under the code and as was required under the enabling statute for the City's zoning authority.  Finally it is also undisputed that Had the plaintiffs decided to open their non-alcoholic facility providing

24

nude or semi-nude entertainment in any C-2, I-1, or I-2 zoning district, including those located on Grand Avenue, or in another tavern already owned and operated by Edward Kraimer at 320 Ross Avenue in the City of Schofield, they would have been able to present nude or semi-nude erotic dancers for the entertainment of their customers, beginning in April, 2003. (DRPPF 58). The reason for this is that the only reason the public entertainment license was denied was because the plaintiffs did not received a conditional use permit for the Grand Avenue location in the C-1 District. (DRPPF 58). Such a conditional use permit would not have been required in any of the above locations and as such the plaintiffs could have opened and ran their proposed non-alcoholic business in any of those locations in April 2003. (DRPPF 58).

Consequently, like the zoning ordinance procedure upheld in *Blue Canary,* the City did not prohibit the plaintiff from operating its business in City, with or without nudity. It merely prohibited the operation of the business in the particular zoning district. The City generally applicable zoning code provisions, operate independently, and are proper "time and place" restrictions, which in purpose and effect, are not targeted to limit expressive conduct. There were many locations in the City of Schofield at which businesses presenting adult-oriented entertainment could be established under the City's zoning code. However, the City reasonably concluded that the specific proposed location for the plaintiffs' adult business was inappropriate given its prime location in the City's highest visibility commercial district.

## V.   THE SCHOFIELD ALCOHOL CODE PROVISION IS NOT UNCONSTITUTIONAL

The plaintiffs' argue the City of Schofield's Alcohol Code Ordinance Sec. 16.03 is unconstitutional.  In *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702 (7th Cir. 2003), the Seventh Circuit addressed whether "a municipality may restrict the sale or consumption of alcohol on the premises of businesses that serve as venues for adult entertainment without violating the First Amendment." *Id*. at 707.   The court held a municipality could restrict the sale of alcohol in such adult businesses.   The analysis in *Ben's* Bar applies to the present case and defeats the plaintiffs' challenge to the City's Alcohol Code Ordinance.

At issue in *Ben's Bar* was a Wisconsin village's ordinance that "prohibited the sale, use, or consumption of alcohol on the premises of 'Sexually Oriented Businesses.'" *Id*. at 704.   The Seventh circuit concluded that the ordinance was not invalid because the evidence before the court supported the village's claim that "liquor prohibition is a reasonable attempt to reduce or eliminate the undesireable "secondary effects" associated with barroom adult entertainment, rather than an attempt to regulate the expressive content of nude dancing." *Id*. at 704.

In addressing this issue the Seventh Circuit noted that it was unsure whether an ordinance prohibiting alcohol at adult businesses was to be reviewed as a "time, place, and manner" restriction, or as a "regulation of expressive conduct." *Id*. at 714. Ultimately,

26

the court noted that such a distinction was irrelevant because the standards for reviewing both types of regulations have become "much" the same. *Id*. The court then went on to trace the lengthy road map provided by the Supreme Court in *44 Liquormart, Inc., v. Rhode Island*, 517 U.S. 484 (1996), for analyzing the constitutionality of adult entertainment liquor regulations. *Ben's Bar*, 316 F.3d at 713-22 (summarizing Supreme Court decisions in: *44 Liquormart, Inc., v. Rhode Island*, 517 U.S. 484 (1996); *Young v. American Mini Theatres, Inc*, 427 U.S. 50 (1976); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *Barnes v. Glen Theatre, Inc.*, 510 U.S. 560 (1991); *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002)).

     After analyzing the effect and holdings of all of these decisions, the Seventh Circuit held:

> [T]hat a liquor regulation prohibiting the sale or consumption of alcohol on the premises of adult entertainment establishments is constitutional if: (1) the State is regulating pursuant to a legitimate governmental power, *O'Brien,* 391 U.S. at 377, 88 S. Ct. 1673; (2) the regulation does not completely prohibit adult entertainment, *Renton,* 475 U.S. at 46, 106 S. Ct. 925; (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments, *Pap's A.M.,* 529 U.S. at 289-91, 120 S. Ct. 1382; and (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available, *see Alameda Books,* 122 S. Ct. at 1734 (plurality opinion); *id*. at 1739- 44 (Kennedy, J. concurring); *or,* alternatively, the

regulation furthers an important or substantial government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest. *Pap's A.M.*, 529 U.S. at 296, 301 (plurality opinion);  *id.* at 310, 120 S. Ct. 1382 (Souter, J., concurring in part and dissenting in part).

*Ben's Bar*, 316 F.3d at 722.

Applying these standards to the village ordinance the court concluded the alcohol prohibition was not unconstitutional because: (1) the village's regulation of alcohol sales and consumption is clearly within its general police powers, *id.* at 722-23; (2) intermediate scrutiny applied because the liquor prohibition did not completely prohibit dancers from conveying erotic message but merely prohibited alcohol from being sold in such premises, and thus, was a time, place, and manner restriction, *id.* at 722-24; (3) the alcohol prohibition was supported by the village's substantial government interest in reducing the secondary effects of alcohol consumption in adult businesses, *id.* at 724-25; (4) the ordinance's prohibition on alcohol was no greater than necessary to combat the secondary effects resulting from such consumption and nude dancing because "as a practical matter, a complete ban of alcohol on the premises of adult entertainment establishments is the *only* way the Village can advance that interest." *Id.* at 727-28.

The court concluded by stating:

> Given the foregoing, we conclude that [the village's ordinance] does not violate the First Amendment.  The regulation has no impact whatsoever on the tavern's ability to offer nude or semi-nude dancing to its patrons;  it seeks to regulate alcohol and nude or semi-nude dancing without prohibiting either.

> The citizens of the Village of Somerset may still buy a drink and watch nude or semi-nude dancing.  They are not, however, constitutionally entitled to do both at the same time and in the same place.   The deprivation of alcohol does not prevent the observer from witnessing nude or semi-nude dancing, or the dancer from conveying an erotic message.  Perhaps a sober patron will find the performance less tantalizing, and the dancer might therefore feel less appreciated (not necessarily from the reduction in ogling and cat calls, but certainly from any decrease in the amount of tips she might otherwise receive).  And we do not doubt Ben's Bar's assertion that its profit margin will suffer if it is unable to serve alcohol to its patrons.  But the First Amendment rights of each are not offended when the show goes on without liquor.

*Id.* at 728 (citation omitted).

The Schofield Code at issue prohibits the provision of a defined list of adult entertainment activities in "any establishment dealing in alcoholic beverages" within the City of Schofield.   The ordinance does not ban all such activities in all commercial businesses in the City of Schofield, just those "dealing in alcoholic beverages."

Before the original passage of this ordinance, the City Council made the following findings:

> (3)    LEGISLATIVE FINDINGS. Whereas, evidence has been propounded that indicates that nudity and sexual conduct and depiction thereof coupled with alcohol in public places begets undesirable behavior, and that prostitution, attempted rape, rape, murder and assaults on police officers have occurred in and around establishments dealing in alcoholic beverages where nude and sexual conduct and depiction thereof is permitted.

> (4)    PURPOSE. It is hereby found that the acts prohibited in subsection (6) encourage the conduct of prostitution, attempted rape, rape, murder and assaults on police officers in and

29

around establishments dealing in alcoholic beverages, that
actual and simulated nudity and sexual conduct and the
depiction thereof, coupled with alcohol in public places begets
undesirable behavior, that sexual, lewd, lascivious and
salacious conduct among patrons and employees with
establishments dealing in alcohol beverages results in violation
of law and dangers to the health, safety and welfare of the
public, and it is the intent of this ordinance to prohibit nudity,
gross sexuality, and the simulation and depiction thereof in
establishments dealing in alcoholic beverages.

(DPF 106).   In December 2003, the City supplemented the above findings with the

following additional supporting evidence:

(3a) Supplemental Findings

Since the original enactment of this ordinance, the City has
conducted further study and review of the off-site, secondary
effects of adult-oriented businesses. The summary and
conclusions of this review are stated in Section 10.15(6)(g)(l)
of the Schofield Code of Ordinances relating to zoning of
Adult Oriented Establishments. These finding are hereby
adopted by reference and incorporated in this ordinance to
supplement the original findings and statement of purpose of
this Section made at its original enactment.

In addition to the sources referred to in Section 10.15(6)(g) of
the Schofield Code of Ordinances, the City has considered the
studies, findings and enactments of the City of Los Angeles.
Study by the Attorney General of Minnesota Working Group
on Sexually Oriented Business, the findings of the Village of
Somerset, Wisconsin and reported judicial decisions involving
regulations relating to the consumption of alcohol on premises
of adult oriented businesses. These sources document the
negative secondary effects of adult-oriented business serving
alcohol. It is hereby the finding of the City Council that the
negative secondary effects of adult oriented-business noted in
the Schofield Zoning Code are not mitigated by the service and
consumption of alcohol, but instead the negative effects are
enhanced or exacerbated by the service and consumption of
alcohol at such businesses.

(DPF 107).  These findings were based on summaries of studies provided to the City Plan Commission and City Council members prior to the enactment of Section 10.15(6)(g) of the zoning code in July 2003 related to adult oriented establishments.  These summaries of studies were from Phoenix; Arizona, Garden Grove, California; Los Angeles, California; Indianapolis, Indiana, Oklahoma City, Oklahoma; Austin Texas; Newport News, Virginia; and Seattle, Washington.  (DPF 70-73).  All of these summaries detailed the various studies' conclusions regarding the secondary effects of adult businesses.  (DPF 73).

Based on the *Ben's Bar* analysis discussed above, Sec. 16.03, not unconstitutional because the evidence before the court supports the City's argument that the prohibition of the sale of alcohol in businesses that permit the listed adult activities is a reasonable attempt to reduce or eliminate the undesirable "secondary effects" associated with alcohol consumption and sales and the listed adult or sexual activities.

First, the City enacted the ordinance pursuant to its "police power" granted by the Wisconsin Legislature under Chapter 125 of the Wisconsin Statutes.  *See* Sec. 16.03(2) (stating "This ordinance is enacted in the interest of the public health, peace, safety, morals and general welfare of the citizens and inhabitants of the City of Schofield, pursuant to the Wisconsin Constitution and laws of the State of Wisconsin and the authority of the City County exercising its right to regulate the sale and consumption of alcoholic beverages, pursuant to Chapter 125 of the Wisconsin Statutes.")  Thus, like the ordinance in *Ben's Bar*, Sec. 16.03 is a regulation clearly within the City's general "police powers" and as

31

such, the City is regulating pursuant to a legitimate governmental power.  *See O'Brien,*
391 U.S. at 377.

Second, intermediate scrutiny applies when reviewing Sec. 16.03, because the
ordinance specifically states that its predominant purpose and intent is to minimize the
negative secondary effects associated with the combination of alcohol sales and
consumption in commercial businesses and the prohibited activities.  *See* Sec. 16. 03(4)
and Supplemental Findings.  All of the listed activities prohibited in establishments dealing
in alcoholic beverages would generally fall under the heading of adult or sexual activities.
Nonetheless, the Ordinance does not ban *all* such activities, it merely precludes those
activities from taking place in businesses that sell or provide alcohol.  Since Sec. 16.03
only regulates establishments "dealing in alcoholic beverages," businesses not selling or
providing alcohol are not affected whatsoever.  Therefore, like the ordinance at issue in
*Ben's Bar,* Sec. 16.03, is only subject to intermediate scrutiny.  *Ben's Bar*, 316 F.3d  at
724.

Third, the ordinance is designed to serve a substantial government interest.  The
City Council in adopting the ordinance stated: "evidence has been propounded that
indicates that nudity and sexual conduct and depiction thereof coupled with alcohol in
public places begets undesirable behavior, and that prostitution, attempted rape, rape,
murder and assaults on police officers have occurred in and around establishments dealing
in alcoholic beverages where nude and sexual conduct and depiction thereof is permitted."

*See* Sec. 16.03(3).   These original findings have been supplemented by additional evidence reviewed by the City Council members such as studies from municipalities around the nation concerning the secondary effects associated with adult businesses in those communities.  *See* Sec. 16.03(a) (noting the City had reviewed "the studies, findings and enactments of the City of Los Angeles. Study by the Attorney General of Minnesota Working Group on Sexually Oriented Business, the findings of the Village of Somerset, Wisconsin and reported judicial decisions involving regulations relating to the consumption of alcohol on premises of adult oriented businesses.  These sources document the negative secondary effects of adult-oriented business serving alcohol.").

Based on its review of the above evidence, the City Council found "that the negative secondary effects of adult oriented-business noted in the Schofield Zoning Code are not mitigated by the service and consumption of alcohol, but instead the negative effects are enhanced or exacerbated by the service and consumption of alcohol at such businesses." *See* Sec. 16.03(a).  This conclusion is "'not an irrational one.'"  *See Ben's Bar*, 316 F.3d at 725-26 (citation omitted).  Further, like the conclusions reached by the village board in *Ben's Bar*, it was entirely reasonable for the City of Schofield to conclude that businesses allowing the listed adult activities in Sec. 16.03(6) to take place, should also not be allowed to serve alcohol, and combining such activities with alcohol consumption "was likely to produce adverse secondary effects at the local level." *Id*. at 726; *see also Blue*

33

*Canary Corp. v. City of Milwaukee*, 251 F. 3d 1121, 1124 (7th Cir. 2001) (noting "[l]iquor and sex are an explosive combination").

Finally, the ban on alcohol in establishments allowing the listed activities to take place "is no greater than is essential" to further the City's substantial interest in combating the secondary effects resulting from such adult activities combined with alcohol sales and consumption. *See Ben's Bar*, 316 F.3d at 727. As was conceded by the court in *Ben's Bar*, a complete ban of alcohol at such adult establishments "as a practical matter" is the only way the City can advance its substantial interest. *Id*. Further, "[p]rohibiting alcohol on the premises of adult entertainment establishments will unquestionably reduce the enhanced secondary effects resulting from the explosive combination of alcohol consumption and" the sexual or adult activities listed in Sec. 16.03(6). *Id.*

The plaintiffs also argue that Sec. 16.03, in overbroad in its scope because it is a ban on "expressive activity that could not plausibly be believed to cause secondary effects," is not limited to live performances, covers "too many places," and does not allow isolated incidences of such conduct. However, as stated above, the ordinance does not ban any of the hypothetical activities set forth in the plaintiffs' brief, it only precludes business from serving alcohol in addition to providing the listed adult or sexual activities. As noted by the court in *Ben's* Bar, a complete ban of alcohol at such adult establishments "as a practical matter" is the only way the City can advance its substantial interest. *Id*

34

In sum, the plaintiffs' facial challenge to Sec. 16.03 must fail.   Under the controlling standards set forth in *Ben's Bar*, the ordinance does not violate the First Amendment.   Accordingly, the City asks the Court to reject the facial challenge to the ordinance.

## VI.   THE ALCOHOL LICENSE CODE WAS NOT REPEALED BY THE ENACTMENT OF THE ADULT-ESTABLISHMENT ZONING CODE.

The plaintiffs argue that when the City enacted the amended zoning code regarding the land use limitations for adult-establishments, the City repealed a separate provision of the Schofield Code of Ordinances related to alcohol licenses and adult-businesses.   The court should reject this argument out-of-hand because the applicability of these code provisions are unrelated to each other, serve completely different purposes, were enacted based on completely distinct powers provided by the Wisconsin Legislature, and most importantly, do not conflict with each other.

As part of the ordinance code chapter related to "Alcohol Beverages," the City enacted Section 16.03 of the Schofield Code of Ordinances that regulates "adult entertainment in commercial establishments where alcoholic beverages are sold, dispensed and/or consumed on the premises."   (DPF 103).   This ordinance is not part of the zoning code, but instead was adopted separately pursuant to the City's police power under Wisconsin Statutes Chapter 125, based on the City's power to regulate the sale and consumption of alcoholic beverages.   (DPF 104).

35

The adult establishment zoning code, on the other hand, is a land use provision, adopted pursuant to the legislative grant of authority in Wisconsin Statute Section 62.23(7)(a), that grants zoning power to the City Council of Schofield, and provides:

> For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance, subject to par. (hm), the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes if there is no discrimination against temporary structures.  This subsection and any ordinance, resolution or regulation enacted or adopted under this section, shall be liberally construed in favor of the city and as minimum requirements adopted for the purposes stated.  This subsection may not be deemed a limitation of any power granted elsewhere.

Wisconsin Statute Section 62.23(7)(a). (DSPF 120, 121).  Thus, by their very nature and authority underlying their adoption, these provisions are completely distinct.  This is even more apparent when one reviews the entire new adult-establishment zoning code because there is absolutely no mention of alcohol anywhere in the zoning code.  (DPF 108).

The plaintiffs entire focus of their argument is the fact that the zoning code provision defines an adult establishment under the zoning code to include an "adult cabaret" which "means a nightclub, bar, restaurant or similar commercial establishment which regularly features..." certain enumerated adult activities.  (DPF 108).  The plaintiffs conclude that this means the zoning code allows nightclubs, bars, and restaurants, to both

provide the listed adult activity *and* serve alcohol. Nothing in the language of the zoning code requires this conclusion. *See State v. Dairyland Power Cooperative,* 52 Wis. 2d 45, 51, 187 N.W.2d 878 (1971) (holding "'[R]epeals by implication are not favored in the law.'").

To the contrary, the zoning code does not define nightclubs, bars, or restaurants to mean that these businesses serve alcohol. Further, it is abundantly clear that since the drinking age in Wisconsin has risen to 21-years of age, many businesses identified as restaurants, nightclubs, and even "bars" are alcohol-free to allow customers between 18-21 to legally gather in such establishments. The plaintiffs were clearly aware of this distinction because they proposed to open a non-alcohol juice "bar" providing nude or semi-nude dancing in Schofield, specifically to provide adult entertainment to 18-21 aged customers. (DPF 32, 39). Consequently, there is nothing in the adult establishment zoning code that conflicts with the alcohol license code, and therefore, the enactment of the amended zoning code did not repeal the distinct alcohol code provision.

## VII.  SCHOFIELD'S NEW "ADULT-ORIENTED ESTABLISHMENT" ZONING ORDINANCE IS CONSTITUTIONAL.

The plaintiffs' have also challenged the constitutionality of the City of Schofield's new "adult-oriented establishment" zoning ordinance enacted in July 2003. Principally, the new zoning ordinance allows as a "permitted use" "adult-oriented" businesses in I-1, and I-2 Districts in the City of Schofield. Accordingly, the new zoning code provision

37

does not act as a total ban on "adult oriented" businesses in the City of Schofield, but merely as a constitutional "time, and place" restriction on the possible location of such businesses.

The Supreme Court inn *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S. Ct. 925, 89 L.Ed.2d 29 (1986), established a three-step analysis for courts reviewing the First Amendment validity of a municipal zoning ordinance that regulated adult businesses. *See R.V.S., LLC v. City of Rockford*, 361 F.3d 402, 407, (7th Cir. 2004). Under the *Renton* test, courts reviewing regulations of adult entertainment establishments must consider: "(1) whether the regulation constitutes an invalid total ban or merely a time, place, and manner regulation, (2) whether the regulation is content-based or content-neutral, and accordingly, whether strict or intermediate scrutiny is to be applied, and (3) if content-neutral, whether the regulation is designed to serve a substantial government interest and allows for reasonable alternative channels of communication." *Id.*

A divided Supreme Court plurality in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), continued to hold to the *Renton* analysis, however, Justice Kennedy in a concurring opinion joined with the four dissenting justices: "[I]n eschewing the content-neutral "fiction" of adult entertainment zoning ordinances." *R.V.S.*, 361 F.3d at 407 (discussing *Alameda Books*).

Thus, the Seventh Circuit recently summarized: "Generally, content based restrictions on speech are analyzed with the strictest scrutiny, but Justice Kennedy [in

38

*Alameda Books*] explained that content based zoning regulations can be exceptions to that rule. In so concluding, he agreed with the plurality [in *Alameda Books*] that 'the central holding of *Renton* is sound: A zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny.'" *Id.* (citations omitted). Because Justice Kennedy's concurrence *in Alameda Books* was the narrowest opinion joining the opinion of the court, the Seventh Circuit has declared it to be the controlling authority. *G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631, 637 (7th Cir. 2003)

The Seventh Circuit has noted that:

> Whatever the label, *Renton*'s second step is best conceived as an inquiry into the purpose behind an ordinance rather than an evaluation of an ordinance's form. *See Alameda Books,* 535 U.S. at 440-41, 122 S. Ct. 1728 (plurality opinion) (explaining *Renton* 's second step "requires courts to verify that the *predominant concerns motivating* the ordinance were with the secondary effects of adult [speech]") (emphasis added) (internal quotations omitted); *Ben's Bar v. Village of Somerset,* 316 F.3d 702, 723 (7th Cir.2003) ("regulations of adult entertainment receive intermediate scrutiny if they are *designed* not to suppress the 'content' of erotic expression, but rather to address the negative secondary effects caused by such expression") (emphasis added); *G.M. Enterprises [v. Town of St. Joseph],* 350 F.3d [631] at 637-38[(7th Cir. 2003)] (noting that courts "must first determine whether the ordinances at issue are *motivated* by an interest in reducing the secondary effects associated with the speech, rather than an interest in reducing speech itself," before applying intermediate scrutiny) (emphasis added). As we noted in *Ben's Bar,* "while the label has changed, the substance of *Renton* 's second step remains the same." 316 F.3d at 702, 721 n. 26.

*R.V.S.*, F.3d at 407-08.

Moreover, the Seventh Circuit has determined that only after confirming that a zoning code's purpose "is to combat the secondary effects of speech" should a court apply the *Renton* intermediate scrutiny test.  *Id*. at 408.  Moreover, "[u]nder this test, zoning regulations are constitutional 'so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication.'" *Id*. (citation omitted).

Thus, a reviewing court must ask "'whether the municipality can demonstrate a connection between speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance.'"  *Id*. (citation omitted).

> The governmental interest of regulating secondary effects may only be upheld as substantial if a connection can be made between the negative effects and the regulated speech.  In evaluating the sufficiency of this connection, courts must "examine evidence concerning regulated speech and secondary effects."  According to the *Alameda Books* plurality, the evidentiary requirement is met if the evidence upon which the municipality enacted the regulation "is reasonably believed to be relevant for demonstrating a connection between [secondary effects producing] speech and a substantial, independent government interest.

*Id*. (citation omitted).  Finally, in summarizing the current state of the law in the Seventh Circuit involving zoning code regulations of adult businesses, the court concluded:

> In sum, *Alameda* 's plurality opinion along with Justice Kennedy's concurrence establish that in order to justify a

40

> content-based time, place, and manner restriction, a
> municipality must advance some basis to show that its
> regulation has the purpose and effect of suppressing secondary
> effects, (i.e., is designed to serve or furthers a substantial or
> important government interest), while leaving the quantity and
> accessibility of speech substantially intact (i.e., the regulation
> is narrowly tailored and does not unreasonably limit alternative
> avenues of communication).

*Id*. at 409.

Contrary to the arguments in the plaintiffs' brief the new adult establishment zoning is nothing more than a constitutional "time, and place" restriction on the possible location of such businesses in the City.  *See R.V.S.*, 361 F.3d at 409.  Moreover the ordinance is targeted solely to minimize the secondary effects of such businesses, and do so in a manner allowing the quantity and accessibility of such speech to remain substantially intact.  *Id.*

Before adopted the new zoning code, the City reviewed multiple studies concerning the secondary effects of adult businesses.  The language of the ordinance reflects that the "predominant concern" of the City in enacting the ordinance was to minimize the negative secondary effects of the listed adult businesses.  "'Federal courts evaluating the "predominant concerns" behind the enactment of a ...ordinance...may do so by examining a wide variety of materials, but not limited to, the text of the regulation or ordinance, any preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware.'"  *R.V.S.*, 361 F.3d at 409 n.5 (citation omitted).

The preamble to the new zoning ordinance provides:

41

1.      <u>Findings</u>. The City Planning Commission, the Everest Metro Police Department and City Staff and Consultants have reviewed a variety of issues and concerns related to the off-site, secondary effects of adult-oriented establishments. In. this process land use study information for adult-oriented establishments prepared for the cities of Phoenix, Arizona: Garden Grove. California; Los Angeles, California; Indianapolis, Indiana; Oklahoma City, Oklahoma; Austin. Texas; Newport News, Virginia; and Seattle, Washington. and the studies and experiences of the City of Wausau, and the Town of Rib Mountain have been reviewed. Based on these, it has been the experience of many of these cities, that adult-oriented establishments can:

a.      Contribute to the impairment of the character and quality of the neighborhood which surrounds these establishments:

b.      Contribute to a decline in the value of real estate property in the neighborhood surrounding these establishments; and

c.      Lead to an increase in many types of criminal activities in neighborhoods where adult-oriented establishments are located.

The objectionable secondary effects of adult-oriented establishments are exacerbated when these types of commercial uses are operated in close proximity to one another.

The City Council desires to minimize and control these adverse secondary effects and thereby:

a.      Protect, health, safety and welfare of the citizens of Schofield;

b.      Protect the citizens from increased crime:

c.      Preserve the quality of life:

d.      Preserve the property values and character of surrounding neighborhoods and businesses; and,

e.      Deter the spread of urban blight.

42

It is the purpose and intent of this subsection of the zoning code to regulate adult-oriented establishments so as to protect and promote the health, safety, and general welfare of the citizens of Schofield and visitors thereto and to establish reasonable and uniform regulations to prevent to concentration. of adult-oriented establishments within the community The ordinance is also intended to deter property uses and activities conducted thereon which, directly or indirectly, cause or would cause adverse effects on the stability of the immediate neighborhood surrounding the adult-oriented establishment.

This ordinance intends to balance the rights of citizens in the City to maintain a decent moral society and, on the other hand, the right of individuals to express themselves freely in accordance with the guidelines of the Constitution of the United States, and the U.S. Supreme Court rulings pursuant thereto. This ordinance has neither the purpose nor effect of imposing limitation or restriction on the content of any communicative materials, including adult-oriented materials. Neither is it the purpose or intent of this ordinance to restrict or deny lawful access by adults to sexually oriented materials nor to deny access by the distributors and exhibitors of sexually oriented materials to their intended markets. The purpose or intent of this ordinance is not to impose judgment on the content or merits of any constitutionally protective form of speech or expression.

Moreover this ordinance serves a substantial government interest and does not unreasonably limit alternative avenues of communication.

(DPF 108).

Based on these concerns, the City enacted regulations that allowed adult-oriented businesses to be located in I-1 and I-2 Districts, away from residential neighborhoods and separated from each other. As stated by the code, the premise for these regulations is:

The objectionable secondary effects of adult-oriented establishments are exacerbated when these types of commercial uses are operated in close proximity to one another.

The City Council desires to minimize and control these adverse secondary effects and thereby:

43

      a.      Protect, health, safety and welfare of the citizens of Schofield;

      b.      Protect the citizens from increased crime:

      c.      Preserve the quality of life:

      d.      Preserve the property values and character of surrounding neighborhoods and businesses; and,

      e.      Deter the spread of urban blight.

(DPF 108).

In support of its determinations, the City relied on extensive studies conducted by other municipalities:

> In this process land use study information for adult-oriented establishments prepared for the cities of Phoenix, Arizona; Garden Grove, California; Los Angeles, California; Indianapolis, Indiana; Oklahoma City, Oklahoma; Austin, Texas; Newport News, Virginia; and Seattle, Washington; and the studies and experiences of the City of Wausau, and the Town of Rib Mountain have been reviewed.

(DPF 68-74,108).  Based on these studies, which the City "reasonably believed to be relevant" to demonstrate the connection between the speech and the substantial government interest in minimizing the secondary effects of such speech, the City enacted the zoning ordinance.  *R.V.S.*, 361 F.3d at 411 (quoting *Alameda Books*).

Moreover, the limited restriction on the location and siting of adult-oriented establishments in the City of Schofield is a narrowly tailored regulation that allows reasonable alternative channels of communications.  The ordinance declares such "adult

44

oriented establishments" to be permitted uses in I-1 and I-2 Districts.  (DPF 108).  By making this limited restriction on such businesses, the City is not outright banning them, but merely ensuring that the secondary effects from such businesses do not spill over into residential neighborhoods zoned under the R-1, R-2, and R-3 districts.

Finally, it is important to note that the adult-oriented zoning code has not reduced the access of individuals wishing to operate such businesses in the City of Schofield in any practical manner.  There remain multiple alternative avenues for opening and running adult-oriented businesses in the City.  "The constitution does not mandate that any minimum percentage of land be made available for certain types of speech.  What it does require is that zoning schemes that regulate the location of speech provide a 'reasonable opportunity' to disseminate the speech at issue."  *North Avenue Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 445 (7th Cir. 1996).  The City's zoning regulation provides such a "reasonable opportunity."

The City's zoning administrator testified that because there are currently no "adult-oriented" businesses in the City of Schofield, he was able to identify 30 possible sites for adult businesses in the I-1 and I-2 Districts at the present time.  (DPF 81-87).  Of these thirty sites, at least four are currently for sale or rent; all have access to city streets, and all have access to city utilities including water and electric. (DPF 85).  Moreover, one of the potential sites at 320 Ross Avenue is currently owned and operated by the plaintiff, Edward  Kraimer as a tavern.  (DPF 86).

In addition, there is no evidence that the residents of the Marathon County area are lacking or limited in the type of business sought to be provided by the plaintiffs in this case. To the contrary, Kevin King testified that Schofield had never had a "burlesque theater" in the 38 years he had lived there. (PPF 53; DRPPF 53). In addition, Gerald Morrell testified that there were many other businesses in the Marathon County area that provided nude or semi-nude dancing and sold alcohol, including: the New Yorker, in Mosinee; Badger Lounge, in Mosinee; Showtime, in Wausau; Teaser's, in Stratford; the Rear End, in Marshfield; the New Body Shop, in Wisconsin Rapids; the Temptations, in Wisconsin Rapids; the Stardust, in Stetsonville. (DSPF 116). Finally, since the new zoning code was adopted, no businesses that would fall under the code's definition of an adult business have contacted the City to look for potential business sites in the city. (DPF 87). In short, like the Chicago zoning ordinance at issue in *North Avenue Novelties*, "it is clear that the zoning scheme has not lessened the ability of producers of [adult-oriented establishments] to find legal locations …to sell their product." *North Avenue Novelties*, 88 F.3d at 441. Accordingly, the Schofield zoning ordinance provides for sufficient alternative channels of communication for adult-oriented businesses and is not unconstitutional either on its face or as applied to the plaintiffs.

**VIII. SHOULD THE COURT CONCLUDE A PROVISION IN THE SCHOFIELD CODE IS UNCONSITUTIONAL, SUCH PROVISIONS ARE SEVERABLE FROM THE OTHER PROVISIONS IN THE CHALLENGED CODE.**

46

Although the City believes all of its ordinances are constitutional, should the court strike down any of the provisions, the remainder of the zoning code ordinances are severable.  Schofield Ordinance Code Section 10.02(4), which controls the entire zoning code, including both the general zoning code provision and the new adult-establishment zoning code, provides: "If a section, clause, provision or portion of this ordinance is adjudged unconstitutional or invalid by a court of competent jurisdiction, such judgment shall not affect the remainder of this ordinance." (DSPF 125).

> Whether an invalid portion of an ordinance should be severed from other valid portions, or the entire ordinance struck down, is a question of state law.  *Lakewood,* 486 U.S. at 772, 108 S.Ct. 2138.  Under Wisconsin law, severability is a question of legislative intent.  *City of Madison v. Nickel,* 66 Wis.2d 71, 78-79, 223 N.W.2d 865 (1974); *City News & Novelty, Inc. v. City of Waukesha,* 231 Wis.2d 93, 119-20, 604 N.W.2d 870 (Ct.App.1999).  As stated in *Nickel,*
>
>> If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional.
>
> 66 Wis.2d at 78-79, 223 N.W.2d 865.  A severability clause, while not controlling, is "entitled to great weight" in determining whether the valid and invalid portions of the statute are severable.  *Id.* at 80, 223 N.W.2d 865; *see also Schultz v. City of Cumberland,* 228 F.3d 831, 853-54 (7th Cir.2000) (determining that invalid part of Wisconsin ordinance regulating sexually oriented businesses was severable from the remainder because of the ordinance's "robust severability clause").

47

*MDK, Inc.*, 277 F. Supp.2d at 951.  In this case, the Schofield zoning code provides as "robust severability clause" which protects the distinct provisions of the zoning code from being struck down even if a provision another provision of the code is struck down.  Thus, should the court conclude either the conditional use permit requirement in part or in toto is invalid, the adult-establishment code remains valid.   Likewise should the adult-establishment code in part be struck down, that does not affect the remainder of the zoning code.  Finally, because the alcohol licensing code is completely separate from the zoning code,  (DPF 103, 104), the constitutionality of any provision in the zoning code does not invalidate the separate alcohol prohibit in adult businesses.  The reason this is important, is that, depending on how the court rules with respect to the validity of a particular code provision, the plaintiffs' ultimately would still not be able to operate their business in the location and manner than they are seeking as part of this lawsuit based on the operation of an independent and valid ordinance.

## CONCLUSION.

For the reasons stated above, the City of Schofield respectfully requests that the court reject the arguments presented in the plaintiffs' motion for summary judgment and enter an order denying the motion.

Dated at Wausau, Wisconsin this 20th day of August, 2004.

ZALEWSKI, KLINNER & KRAMER,
LLP, Attorneys for the Defendant, City of

48

Schofield

_____
Michael J. Roman
Wisconsin State Bar No. 1020648

Address:
1500 Merrill Avenue
P.O. Box 1386
Wausau, WI 54402-1386
(715) 675-1999 phone
(715) 675-7698 fax